Manorhaven Capital LLC v Marc J. Bern & Partners, LLP (2025 NY Slip Op 02551)

Manorhaven Capital LLC v Marc J. Bern & Partners, LLP

2025 NY Slip Op 02551

Decided on April 29, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 29, 2025

Before: Kern, J.P., Kennedy, Friedman, Gesmer, Scarpulla, JJ. 

Index No. 654869/22|Appeal No. 4210-4211-4212|Case No. 2024-02069, 2024-07466, 2024-07909|

[*1]Manorhaven Capital LLC, Plaintiff-Respondent,
v
Marc J. Bern & Partners, LLP, Defendant-Appellant.

Pollack, Pollack, Isaac & DeCicco, LLP, New York (Brian J. Isaac of counsel), for appellant.
Binder & Schwartz LLP, New York (Eric B. Fisher of counsel), for respondent.

Order, Supreme Court, New York County (Andew Borrok, J.), entered March 7, 2024, which, to the extent appealed from as limited by the briefs, denied defendant's motion to dismiss the complaint, unanimously affirmed, without costs. Order, same court and Justice, entered December 2, 2024, which granted plaintiff's motion for summary judgment, and denied defendant's cross-motion to compel discovery, unanimously affirmed, without costs. Supplemental Order, same court and Justice, entered December 4, 2024, which granted prejudgment interest on the damages awarded to plaintiff, unanimously affirmed, without costs.
Plaintiff Manorhaven Capital LLC is an investment bank. Defendant Marc J. Bern & Partners, LLP is a national law firm concentrating primarily in the areas of personal injury, mass tort, and medical malpractice. In August 2021, Manorhaven and Bern entered into an agreement pursuant to which Bern retained Manorhaven to serve as its exclusive investment banker for procuring a debt refinancing (the Agreement).
Section 3 of the Agreement provided that Bern would pay Manorhaven, at each closing, a cash fee equal to 2% of loan proceeds "actually received" by Bern (the Fee) with respect to any debt refinancing transaction during the term of the Agreement, from August 16, 2021 through December 31, 2021 (the Fee Provision). Section 5 of the Agreement (the Fee Tail Provision) provided that Bern's obligation to pay the Fee extended for another year, to December 31, 2022, with respect to any debt refinancing transaction entered into by Bern with a lender or investor that had been "contacted" by Manorhaven during the Term of the Agreement (the Tail Period), "provided that, Manorhaven shall have kept [Bern] apprised on a contemporaneous and continuing basis with the names, key contact information and status of conversations with potential lenders for the Transaction, which information shall be set forth in Schedule 1, as amended from time to time" (the Notice Provision).
The record establishes, and Bern does not dispute, that Manorhaven "contacted" nonparty D.E. Shaw during the term of the Agreement, and that Bern entered into a financing transaction with D.E. Shaw less than a year after the Agreement expired. However, Bern has not paid Manorhaven the Fee earned under the Agreement. In the face of this clear contractual language and the undisputed facts, Supreme Court properly awarded summary judgment to Manorhaven.
Bern's arguments to the contrary are unpersuasive. Bern argues that more was required of Manorhaven under the Agreement, because "[e]xpress conditions must be literally performed; [and] substantial performance will not suffice" (MHR Capital Partners LP v Presstek, Inc., 12 NY3d 640, 645 [2009]). In this vein, Bern contends that Manorhaven did not strictly comply with the Notice Provision of Section 5 because the updates provided from Manorhaven to Bern were not continuous, in writing, and in real time, and because such communications [*2]did not include "key contact information" and was not provided under the title of "Schedule 1". However, the record firmly establishes that Manorhaven indisputably informed Bern of its contacts with D.E. Shaw and that D.E. Shaw had passed on the deal (such that there would be no further updates to provide). This was enough to establish compliance with the Notice Provision.
Even assuming that Manorhaven did not strictly comply with Section 5 of the Agreement, Bern would still be obligated to pay the Fee because the minutiae of the Notice Provision amounted to more than a "matter of form, not substance" (see e.g. PDL Biopharma, Inc. v Wohlstadter, 2019 NY Slip Op 32693[U], 19-20 [Sup Ct, NY County 2019]). The failure to provide any additional updates or contact information with respect to D.E. Shaw, who had already passed on the deal, would have amounted to a relatively trivial breach (id.).
The court also properly awarded summary judgment to Manorhaven with respect to damages. Bern contests the court's reading of the Fee Provision and contends that the court improperly awarded damages based on the total funds that were disbursed to Bern under the credit facility (some $233 million), rather than the amount of funds that had been "actually received" by Bern (some $45 million). This argument is also without basis.
The Fee Provision's language relating to the loans "actually received" plainly means the amount of the loan facility that was actually drawn down by Bern ($233 million) as opposed to the total amount that had been committed under the Credit Agreement ($250 million). The court properly found that Bern's proffered interpretation — excluding from the Fee the loan proceeds that had been directed to third party creditors, because they had not been "actually received" by Bern — as overly technical and leading to a result that is not supported by the record or the Fee Provision.
We have considered Bern's remaining contentions and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 29, 2025